McIlvaine, C. J.
The question in this case is whether notice of the dishonor of a promissory note, at its maturity, given by the indorsee to the assignee in insolvency of the indorser, when no such notice is given to the indorser, is sufficient to charge the indorser, or the assigned estate, with the payment of the claim in the hands of the indorsee.
By the assignment a trust is created in the assignee. Beneficiaries of the trust are, first, those having liens upon the ti’ust estate; second, the creditors of the assignor; third, the assignor himself. The mode of administering the trust is regulated by statute.
It is not contended in this case that the claim of the bank, as indorsee, is in any sense a lien on the trust property, or should be preferred to the claims of general creditors.
In the administration of an assignment, the assignee or trustee is required to file accounts in the probate court, and section 6356 of Revised Statutes provides : “ Whenever, on settlement, the same shall show a balance remaining in the hands of said assignee or trustee, subject to distribution among the general creditors, a dividend shall be declared by the probate judge, payable out of such balance, equally among all the creditors entitled, in proportion to the amount of their respective claims against the assignor, including those disallowed, as to which the claimant has begun proceedings to establish, the same as hereinbefore required, and claims held under advisement; of the making of which dividend and of the time and place of payment thereof, notice shall be given by advertisement once, in a newspaper published and of general circulation in the county in which such trust is being administered, and in such other way as the court may order; of the payment of which dividends and those remaining uncalled for and unpaid at that time, report shall be made within sixty days after the day fixed for the payment of the same ; the court shall then cause a new notice to be given to the owners of the unpaid dividends, in such way as the court may direct; and if the same are not demanded within twelve months thereafter, *351 the same shall be divided pro rata among the other creditors, until they are paid in full, and the remainder, if any, to the assignor or his legal representatives. The dividends reserved for claims disallowed, or held under advisement, when the proceedings to enforce their allowance have been commenced, as to claims disallowed, shall be held until said proceedings have terminated, when they shall be paid, if the allowance of the claim has been ordered, on the same; otherwise they shall be distributed pro rata among other creditors not paid in full, or refunded to the assignor, as the case may require.”
It appears to me too plain for discussion, that the fund subject to the payment of general creditors of the assignor,can be used for no other purpose, and that any balance not so used must be refunded to the assignor. It therefore follows that, inasmuch as the bank has no lien on the property assigned which constitutes it a preferred claimant, if it be not a creditor of the assignor, it would be palpably unjust to the general creditors as well as to the assignor himself, to appropriate a portion of this fund to the payment of the note in suit.
It is certainly unnecessary to say any thing more to show that the trust property is not liable for the payment of this note, unless the liability of Aleshire, the indorser and assignor, has been-fixed by the notice of dishonor given his assignee. To so hold would be equivalent to holding that Aleshire is liable for the debt of another for which he is not responsible, either in law or by contract.
The liability of Aleshire by his contract was conditional. His contract was that he would pay the note, if the maker, on demand, at maturity, should fail to pay it, provided the holder of the note should duly notify him of such demand and non-payment. There is no pretense that such notice was given to Aleshire, or that by the exercise of reasonable diligence, it could not have been given. The claim is, that the giving of such notice to Ales'hire’s assignee was a reasonable compliance with the conditions o.f the contract of indorsement, or,'if not such compliance with conditions as *352 would render Aleshire personally liable, it would, at least, bind the property in the hands of the assignee.
The last proposition has been sufficiently considered. It may, however, be well to add that the power of the assignee was confined to the care of the assets placed in his hands, and the payment of debts already existing, conditionally or unconditionally, against the property or the assignor, but did not include the right to create new and additional debts, either against the assignor or the property which had been placed in his hands, other than expenses of the administration.
I admit that the contract of indorsement must be fairly and reasonably interpreted. A literal compliance with its terms will be excused where it would be unreasonable to exact it. For instance, if the indorser be dead at the time notice of dishonor should be served, notice to his personal representative is sufficient. Notice to the general agent of the indorser is sufficient. If, under the circumstances, notice be impossible or impracticable, it is excused altogether. In such cases the liability of the indorser becomes fixed.
But we can see no ground upon which the personal liability of'the indorser should be fixed by notice to his assignee in insolvency. The statute makes no such provision. Such notice is not expressly or impliedly authorized by the deed of assignment, If the assignee can be considered the agent of the assignor for any purpose, his power is limited, not general. By the administration of the assignment the assignor is not discharged from any of his unpaid debts. The service of notice on the indorser is not rendered impracticable by the assignment, nor is the service of notice thereby waived.
If, therefore, the personal liability of the indorser, who is also assignor in insolvency, be desired by the holder of the indorsed paper, the notice of its dishonor by the makers should be given to. the indorser, and not to his assignee in insolvency. If the liability of the indorser be thus fixed, it appears to me, as a necessary result, that the claim may *353 be proved against the assignee, whether he has or has not received notice of the dishonor. The claim being thus, fixed as a debt against the assignor, the holder becomes a beneficiary under the express terms of the assignment.
If the doctrine last stated needed any authority to sustain it, it is abundantly supported by the reasoning in the recent case of Ex parte Baker and In re Bellman, 4 Ch. D. 795.
If it be true, and it certainly is, that the claim, if notice of dishonor be given to the indorser, can be proved against the assignee, although he has not been notified of its dishonor, it follows that notice to the assignee must be regarded as given solely for the purpose of fixing the liability of the indorser by his contract of indorsement. Such notice, however, as we have seen, is not a literal performance of the condition in the contract. Is it a reasonable performance of such condition ? The reason that underlies the necessity for the notice is, that the indorser, when liability is thus fixed, may protect himself against loss by compelling the makers, for whom he is thus placed in the relation of surety, to discharge the indebtedness. Notice to the assignee does not place the indorser in this condition. We have already stated that the assignee can'not be considered as the general agent of the assignor. In the discharge of his duty he acts as representative of the beneficiaries. He is under no obligation to give notice of the dishonor to his assignor. Hence, if notice to the assignee were held to be sufficient to charge the indorser, he would be deprived of the means of indemnity and protection which notice of the dishonor is intended to afford.
It is no answer to this proposition to say that the assignee has power to protect the trust estate by compelling the makers to discharge the debt. The same power and duty would devolve on the assignee if the notice of dishonor were served on the indorser. But the true solution of the question lies in the fact that the liability fixed by demand and notice of non-payment is a personal liability. Such a *354 liability is based on the contract of indorsement, and can attach only to the indorser, and not to his assignee. If the assigned property be charged with the debt, it can only be by first charging the assignor with personal liability, whereby th.e property, in course- of the administration of the trust, becomes liable for the payment of.the debt. Demand and notice of dishonor is not a means of creating a lien on the property of the indorser, whether assigned or not assigned.
It is clear, therefore, that the indorser must be charged, and notice must be served upon him, or his agent, or his personal representative, or be excused altogether. In this case neither alternative has been complied with.
But little, aid in the solution of this question has been derived from books. The writers of text-books have generally recommended the giving of notice of dishonor to both the assignor and assignee. We think such double notice to be unnecessary. It has never been- said by court or text-writer that notice to the indorser is not sufficient. But that such notice is sufficient to bind the assignee in bankruptcy or insolvency in the administration of his trust, has frequently been said and adjudged. That notice to the assignee is sufficient has been adjudged,’as far as we are informed, only in a single reported case, Callahan v. Bank of Kentucky, by the court of appeals of Kentucky, 6 Ken. Law Rep. 188. While we entertain the highest respect for that court, we are not satisfied with the conclusion or logic of that case. We think that case should not be followed, especially in a state where an assignment does not absolve a debtor from his personal liability on his debts, or any portion thereof, which remains unprovided for or unpaid by the assignee.
My attention has been • called to Ex parte Tremont National Bank, 2 Lowell’s Dec. 409, in which it was held by the district court • of the United States for the district of Massachusetts, under the bankrupt- act, that a bankrupt, after adjudication in bankruptcy and before the appointment of an assignee, may waive demand and notice *355 as to a note indorsed by him and maturing during that interval, and that such waiver binds the assignee afterward appointed. That case is relied on as militating against the doctrine above announced. If any thing contained in the opinion in that case can be so construed, it is by mere implication. Certainly the case itself did not require such holding, as the decision arrived at is perfectly consistent with the conclusion announced in this case.
And again, the difference between the bankrupt law, which absolves the bankrupt from all future liability on debts provable against his estate,, and our insolvent laws, might, possibly,.require different conclusions in respect to the effect to be given to notice served on the assignee. As to this, however, I express no opinion.

Judgment reversed.